NOTE.—Reported in 111 N. E. 644, 113 N. E. 310.

---

## VANDALIA RAILROAD COMPANY *v.* TOPPING ET AL.

[No. 9,133. Filed June 30, 1916.]

1. RAILROADS.—*Right of Way.—Grant.—Extent of Land Acquired by Grantee.*—Where the grant of a right of way to a railroad company contains no limitation as to the width of the way granted, the railroad company may, in the absence of any contrary agreement, occupy the width it could acquire under the statute (§5195 Burns 1914, §3903 R. S. 1881). p. 664.

2. RAILROADS.—*Right of Way.—Grant.—Title Acquired.—Evidence.*—Where a railroad company acquires a right of way by a grant containing no limitations as to its width, the question of how wide a way the grantee acquired by occupation, within the limits

fixed by statute, is one of fact to be determined by the aid of extrinsic evidence. p. 664.

3. RAILROADS.—*Right of Way.—Grant.—Character of Estate Acquired.—Easement.*—Under §5195 Burns 1914, §3903 R. S. 1881, providing that voluntary grants of real estate taken by a railroad corporation for a right of way should be held and used for the purpose of such grants only and not to exceed six rods wide, a railroad company, by a grant of a right of way, acquires but an easement in the land, the fee remaining in the grantor. p. 664.

4. DEEDS.—*Extent of Grant.*—While a railroad company may take an estate in fee, or a right of way of definite width, yet the parties may by contract create a less estate than a fee, or a right less in extent than that which the law authorizes the grantee to acquire. p. 665.

5. APPEAL.—*Ejectment.—Erroneous Instruction.—Presumption.—Theory of Pleadings.*—Where, in an action to quiet title against a railroad company, which by its cross-complaint claimed but a right of way across the land involved, the court instructed the jury that a fee-simple title means the highest title known to the law and that neither party could recover without establishing such title, such instruction was erroneous and presumed to be harmful, and informing the jury that the plaintiffs, who were claiming the fee, would have to show a fee-simple title to recover, and finding for them, does not cure the error as to the defendant, since a fee-simple title in one person and an easement in another are not incompatible estates. p. 665.

6. EJECTMENT.—*Exemplary Damages.—Statute.*—Section 1108 Burns 1914, §1062 R. S. 1881, providing that in actions in ejectment the jury may award exemplary damages in case of wanton aggression, does not apply where the defendant is shown to have acted in good faith under what he believed to be a valid right. p. 667.

7. EXECUTION.—*Evidence.—Title.—Sale of Land.*—To prove title by a sale on execution, or order of sale, the purchaser must show a valid judgment, an execution or an order of sale, and deed. p. 668.

8. EJECTMENT.—*Direction of Verdict.—Title in Fee Simple.—Evidence to Prove.*—In an action in ejectment it was not error for the trial court to refuse to peremptorily instruct the jury to find for the defendant because of the failure of the plaintiff to prove the record title upon which he relied to show ownership in fee-simple where the plaintiff also claimed title by prescription and produced evidence tending to prove such claim, since title by prescription is sufficient to support an allegation of title in fee simple. p. 668.

Action from Greene Circuit Court; *Theodore E. Slinkard*, Judge.

Action by George W. Topping and another against the Vandalia Railroad Company. From a judgment for plaintiffs, the defendant appeals. *Reversed.*

*Samuel O. Pickens* and *Owen Pickens*, for appellant.

*James M. Hudson* and *A. G. Cavins*, for appellees.

MORAN, J.—This controversy is over a small tract of real estate in the village of Lyons, Greene county, Indiana. Appellees claim the fee-simple title to the same and assert this right in two paragraphs of complaint, one for possession and damages, and the other to quiet title. On the part of appellant, it claims the ownership as a part of its right of way for railroad purposes, and which it asserts by way of cross-complaint to quiet title. Upon issues being joined by an answer of general denial addressed to the complaint and cross-complaint by the respective parties, the cause was submitted to a jury, with the result that a verdict was returned in favor of the appellees, finding that they were entitled to possession and were damaged in the sum of $450 by the unlawful detention, and that they were entitled to have their title quieted thereto.

A brief history of the surroundings and source of title, through which appellant claims, is material to an understanding of the questions presented for review under the error assigned on the overruling of its motion for a new trial, viz., the giving of instructions Nos. 13 and 16 by the court on its own motion and in refusing to give instruction No. 8 as requested by appellant, and that the verdict of the jury is not supported by sufficient evidence.

In the immediate vicinity of the real estate in controversy, the course of appellant's railroad is in a northeasterly and southwesterly direction, approximately at an angle of forty-five degrees, and in its course it crosses the northwest part of lot No. 6 in the village of Lyons, entering the lot a short distance south of the northwest corner and leaving the lot at about the same distance east of this corner. Appellees own thirty-eight feet off and along the west side of lot No. 6 lying south of appellant's railroad; the northern boundary depending upon the ownership of the parcel of land in dispute, which is a small strip paralleling the course of the railroad, and for the full width of appellees' tract of real estate. In March, 1913, appellant constructed a siding in connection with its main track, and in doing so it is contended by appellees that it encroached upon their real estate.

On July 6, 1866, Simeon Boon, who was the owner of considerable real estate in the vicinity of the village of Lyons, of which lot No. 6 is now a part, executed to the Indianapolis & Vincennes Railroad Company the following instrument of writing:

"I, Simeon Boon, of the county of Greene and State of Indiana, for and in consideration of the advantages which may or will result to the public in general and myself in particular by the construction of the Indianapolis and Vincennes Railroad, as may be surveyed or as the same may be finally located, and for the purposes of facilitating construction and completion of said work, do hereby for myself, my heirs, executors, administrators and assigns release, relinquish and forever quit claim to the Indianapolis and Vincennes Railroad Company the right of way for so much of said railroad as may pass through the following described piece, parcel or lot

of land in the county of Greene, in the State of
Indiana, that is to say the southwest quarter
of the N. E. S. 4 and range 6 west, and the
right to cut and remove for my use such
trees as may be standing near and liable to
fall upon the track, said company to allow me
to join my fences on each side of said land under
the direction of the engineer so as not to
obstruct the use of the tracks to pits in said
railroad tracks to be put in by said company at
their own expense, provided I give them notice
that I require the same before the iron is laid;
said company also to give myself and heirs
the exclusive use of any of the land hereby re-
leased not needed for the road for the time
being after the same shall be constructed
so as in no wise to obstruct the road."

Following the execution of this instrument,
and in the years of 1867 and 1868, the Indianapolis
& Vincennes Railroad Company constructed its
railroad over and upon the land described in the
grant, which road has ever since been in operation
as a railroad. Subsequent to the construction
of the railroad, a part of the land in this vicinity
and through which the road passed was platted
into lots as a part of the village of Lyons, Indiana.

Upon the trial of the cause, in addition to the
parties agreeing that Simeon Boon was the owner
of the real estate described both in the complaint
and cross-complaint, prior to the execution of the
foregoing instrument in writing, the following
further stipulation was entered into: "It is further
stipulated by and between the parties that the
Indianapolis and Vincennes Railroad company, a
corporation, was the owner of the railroad referred
to in the complaint and cross complaint for more
than 20 years prior to January 1, 1905, and that on
said date, the defendant Vandalia Railroad Com-
pany, a railroad corporation, succeeded the said

Indianapolis and Vincennes Railroad Company in such ownership and the title to said railroad thereupon became vested in defendant Vandalia Railroad Company, and it has ever since owned and operated the same.''

Appellees allege in their complaint that they are the owners in fee simple of a given tract of real estate, which includes the part in dispute and their contiguous real estate not in dispute. Appellant in its cross-complaint alleges, "that it is the owner and in the possession of and for a part of its right of way for the maintenance and operation of its railroad" of a tract of real estate containing 1,663 square feet, lying within the general description of the part of lot No. 6 crossed by appellant's railroad in the village of Lyons, its boundary line being fifty feet on either side of the center of its main track, measured at right angles with the course of its road. Inasmuch as the technical measurements disclose an actual parcel of real estate claimed by both parties, and the parties so contend, and the principle of law involved not depending upon the nicety of the description, the opinon will not be further incumbered by setting the same out by metes and bounds.

For a number of years the real estate now owned by appellee was, and is now, being used for mill and warehouse purposes, the building thus used standing a short distance south of appellant's right of way. Likewise, a platform scale was installed several years ago in connection with the business conducted on appellees' premises, and in close proximity to appellant's siding. The mill, warehouse and scale are patronized by the public in general. Just south of the siding of appellant's railroad, and immediately north of the scale and paralleling the railroad between Main and Wash-

ington streets, Main street being north and Washington street west of lot No. 6, there is a driveway, which has been used by the patrons of the railroad and the business conducted on appellees' premises. Cars were loaded and unloaded from time to time as they were placed on the siding by using the driveway to reach the same. Before the siding was shifted to the south, the distance between the main track and the siding was about thirteen feet; but by the change the driveway is practically utilized by the siding, greatly impairing ingress and egress to appellees' place of business. For several years in the past appellant had planted from time to time property posts on this side of its road at various places at a distance of fifty feet from the center of its main track, under a claim that its right of way extended to this point. It built a sidewalk along the east side of Washington street for a distance of fifty feet on either side of the center of its main track, thus the walk on the south side was built to the point claimed as the boundary line by the appellant, but extends farther south than the point now contended for by appellees as marking the boundary line at this place.

Appellees' contention is that appellant by its grant is entitled only to the amount of real estate it heretofore actually took possession of in the operation of its road in this locality, and that the construction of the siding in March, 1913, where it now is brings appellant's railroad over and upon real estate not theretofore in its possession.

Appellant's position is that it has a right of way of 100 feet in width, and by measuring from the center of its main track fifty feet that the siding constructed, as aforesaid, is on its right of way.

There being no limitation in the instrument

as to the width of the grant from Simeon Boon to the Indianapolis & Vincennes Railroad Company, it had the right to occupy the width it could have acquired under the statute, there being no further agreement; but as to whether it did so can only be ascertained by resorting to the aid of extrinsic evidence, which is permissible. *Fort Wayne, etc., R. Co.* v. *Sherry* (1890), 126 Ind. 334, 25 N. E. 898; *Lake Erie, etc., R. Co.* v. *Michener* (1889), 117 Ind. 465, 20 N. E. 254; *Cincinnati, etc., R. Co.* v. *Geisel* (1889), 119 Ind. 77, 21 N. E. 470; *Indianapolis, etc., R. Co.* v. *Lewis* (1889), 119 Ind. 218, 21 N. E. 660. So this branch of the case resolves itself into a question of fact (*Campbell* v. *Indianapolis, etc., R. Co.* [1887], 110 Ind. 490, 11 N. E. 482), which was properly submitted as such to the jury.

At the time appellant's predecessor obtained the grant from Simeon Boon, the law providing for the incorporation of railroad companies approved May 11, 1852, was in force (§5195 Burns 1914, §3903 R. S. 1881), which provides, among other things, that voluntary grants of real estate taken by a railroad corporation should be held and used for the purpose of such grants only, and not to exceed six rods wide. Under the grant in this case, the Indianapolis & Vincennes Railroad Company acquired but an easement as "the grant of a right of way is the grant of an easement and implies that the fee remain in the grantor. A person who has a right of way has nothing more than a right of passage, and can not be the owner of the *corpus* in the land. It is a settled rule that where the owner of the fee becomes the owner of the easement, the less estate is merged in the greater, but where one person owns only the right of way the fee is in the owner of the servient

estate. Here the only estate the deed professes to convey is the right of way, and consequently the fee remains in the grantor, since, where one party has a right of way, the other has the fee. * * * Here the right is founded entirely upon contract, and not upon the proceedings under the right of eminent domain. The question is not what estate might have been acquired, but what estate did the one party bargain for and the other convey? It does not follow that because a railroad company may take an estate in fee, or a right of way of a defined width, it does take such an estate, or such a right of way, for parties may by their contract create a less estate than a fee, or a right less in extent than that which the law authorizes the grantee to acquire." *Cincinnati, etc., R. Co.* v. *Geisel, supra; Chicago, etc., R. Co.* v. *Huncheon* (1892), 130 Ind. 529, 30 N. E. 636; *Abercrombie* v. *Simmons* (1905), 71 Kan. 538, 81 Pac. 208, 1 L. R. A. (N. S.) 806, 114 Am. St. 509, 6 Ann. Cas. 239.

Appellant did not by its cross-complaint, nor does it now, claim the ownership of the disputed parcel of land in fee simple. With this issue for consideration, the court on its own motion informed the jury, by instruction No. 13 that a "fee-simple title" meant the highest title known to the law, and that appellees could not recover upon their complaint without showing a fee-simple title, and the same was true as to appellant, that it could not recover upon its cross-complaint unless it established a fee-simple title. Appellant not proceeding upon the theory that it owned a fee-simple title, this instruction was erroneous and must, under the circumstances, be presumed to be harmful in the absence of further explanation, which the instructions do not contain. It is

susceptible of the inference that, unless appellant had a fee-simple title to the real estate in controversy, it had no right or title whatever; this would be the logical deduction from the instruction. Informing the jury that appellees would have to show a fee-simple title or fail, and a finding in their favor does not obviate the error as to appellant, as a fee-simple title in one person and an easement in another are not incompatible estates or interests in real estate under the circumstances. *Muncie Electric Light Co.* v. *Joliff* (1915), 59 Ind. App. 349, 109 N. E. 433.

As to whether appellant claims the parcel of land in controversy as a part of its right of way under its original grant or by prescription can make no difference, for in either event its estate is that of an easement; and, while the authorities recognize that a fee may exist in an easement (*Branson* v. *Studabaker* (1892), 133 Ind. 147, 33 N. E. 98; *Meyer* v. *Pittsburgh, etc., R. Co.* (1916), 63 Ind. App. —, 113 N. E. 443), this would not free the instruction from its misleading tendency, as it naturally would impress itself upon the average juror, and especially in view of the fact that the jury was informed that a fee-simple title in land is the highest title known to the law.

Instruction No. 16 given by the court of its own motion, as complained of by appellant, informed the jury that, if it found that, in the taking of possession by appellant of the land in dispute, it did so in a wanton, aggressive manner, exemplary damages might be awarded to appellee. In actions for ejectment, it is provided by statute, "In cases of wanton aggression on the part of a defendant the jury may award exemplary damages." §1108 Burns 1914, §1062 R. S. 1881. In the Century Dictionary and Encyclopedia, "wanton" is defined

as follows: "Characterized by extreme recklessness, foolhardiness; malicious; recklessly disregardful of the rights or of consequences." In 13 Cyc 109, it is stated: "Where an act has been done in good faith, although it may. result in serious injury to the defendant, there can be no recovery of exemplary damages. The question whether an act was wilfully or wantonly committed is important in considering the damages. Where the wrong is wilful or wanton, the jury is authorized to give any amount of damages beyond the actual injury sustained as a punishment and to preserve the public tranquility. But where the wrongdoer acts in good faith, with honest intentions, and with prudence and proper caution, although he may invade the rights of another, exemplary damages cannot be recovered." If appellant, in moving its side track over and upon the parcel of real estate in controversy, acted under the belief that it was doing so under a valid right, in that the easement extended fifty feet from the center of the main track and the siding was constructed within this limit, the applicability of this instruction might well be questioned. In view, however, of the conclusion heretofore reached and what has been said here in reference to the law governing exemplary damages, we need not further extend the discussion in this respect, as the question raised is not likely to occur again upon a retrial of the cause.

Instruction No. 8 requested by appellant, and which it is insisted should have been given, was a peremptory charge in favor of appellant. Questions presented under the refusal to give this instruction are the same as the questions presented under the evidence, viz., that it is not sufficient to sustain the verdict, and will be presented as they

relate to the evidence. The immediate question thus presented, however, is that the appellees relied upon a record title to establish the allegations of their complaint that they were the owners in fee simple of the real estate in controversy, and that the record title does not support this allegation, and, being required to recover on the strength of their own title, they were not entitled to a verdict in their favor; that in the chain of their record title is a sheriff's deed, which only purported to convey an undivided interest of the judgment debtor; and that the execution was not produced and introduced in evidence. It is the law that in order "to prove title by a sale on execution, or order of sale, the purchaser must show a valid judgment, an execution or an order of sale, and deed." *Indianapolis, etc., R. Co. v. Center Tp.* (1895), 143 Ind. 63, 40 N. E. 134, and authorities cited.

Appellees, however, contend that regardless of the record title, they have title by prescription, and inasmuch as title by prescription supports the allegation in the complaint of ownership in fee simple, the question thus raised and kindred questions as to the infirmity in the chain of title need not further be considered. *McWhorter* v. *Heltzell* (1890), 124 Ind. 129, 24 N. E. 743.

Judgment reversed, and cause remanded, with instructions to the trial court to grant appellant a new trial, and for further proceedings in accordance with this opinion.

NOTE.—Reported in 113 N. E. 421. Interest acquired by railroad company in lands purchased for right of way, 6 Ann. Cas. 242; 13 Ann. Cas. 432; Ann. Cas. 1916E 763.